Schaeffler v. United States I think the podium will come up a little bit, Mr. Welty, if you... Oh, it's all the way up there? I'll try to speak into the microphone. That's fine, thank you. Good morning, and may it please the court. My name is Todd Welty, I'm joined at council table by Charles Quigg, one of my colleagues, and we represent Georg Schaeffler and his affiliated businesses in this appeal. We're here today because on the eve of defeat, the IRS withdrew its summons in an effort to avoid an adverse final judgment on Schaeffler's privilege and work product claims. The voluntary cessation doctrine prevents this tactic. To be clear, this case is not moved because the IRS has not carried its stringent and formidable burden to show that it is absolutely clear that it will not seek the summons documents again. If it does seek them again and it either asks for more or asks for fewer documents, you've still got your argument, right? In which forum, Your Honor? Wherever you happen to first start off. I guess they're going to issue the summons and then you're going to challenge that in the district court, right? Your Honor, the government says it's met its burden for the first time on brief because it's decided not to issue any further summonses. And yet it also tells... Or seek production pursuant to the summons that's been issued. Or am I misunderstanding? You're correct on that, Your Honor. In fact, the IRS actually goes further and says by withdrawing the summons, the IRS relinquished the opportunity to seek production of any of the summons documents, including those that on remand the district court might have ordered disclosed. But we now know that that is not correct. The IRS has, in Document 85, filed on April 11th in this case, said that it is reserving its right to litigate these issues again in discovery if the underlying dispute is not settled administratively. Your language is even stronger on page one of your brief. You say that the government staged an end run. The IRS withdrew the summons to attempt to moot the case so it can pursue the same documents again in a different form. What's the good faith basis for making that claim, that that's the purpose behind the IRS withdrawing the summons? Yes, Your Honor. We on... In the record, the Joint Appendix A-16, when the question of mooting the case was raised by the IRS, we asked clearly, do you intend to relitigate petitioner's privilege claims in a different form? In a telephone conversation, the IRS was unable to confirm that that was not its plan. And, in fact, this is not the first time through procedural maneuvers that the IRS has sought to avoid a judicial determination of Mr. Scheffler's privilege and work product claims. In the record, in the case below, case number 1-13-CV-04864-HB, document 1-16, filed on July 12, 2013. Paragraphs 10, 11, 12, 13, 15, 16, 18, 21, 23, 24, 25, and 26 lays out the precursor to the summons at issue in this case. When this IRS examination began in 2012, the IRS, on September 5 of that year, requested production of tax advice. On September 18, there was an in-person meeting with the IRS where all privileges and protections, including attorney-client privilege, 26 U.S.C. 7525, tax practitioner privilege, work product, and its common interest claims to prevent waiver were discussed with the IRS. Later, several months later, we learned that the IRS was attempting to obtain these documents over which we had claimed common interest through a treaty process with Germany. And they later told us that only if they were unsuccessful in obtaining these privileged and confidential documents, through the treaty process would they bring a summons case. That summons occurred in April of 2015, following our intervention through hiring counsel in Germany to intervene in the treaty process to prevent the end run around our right to have a judicial determination of our privilege and work product claims, and specifically the common interest that the Second Circuit found in the prior decision in this case. And so when the summons was issued, it was a special-purpose summons. It's at A-13 of the joint appendix. It specifically calls for all documents created by Ernst & Young, including but not limited to legal opinions and analyses provided to third parties other than the Schaeffler Group. That was designed to test the common interest, which this court found. And it was only on remand, after the court found, in favor of our common interest and work product claims. And by the way, along that line, the court finds rejecting the more narrow views in the Fifth Circuit on both common interest and work product that the IRS chose to dismiss the case rather than proceed to a final judgment. And they cannot and will not, and do not unbrief, say that they will not seek to relitigate these issues in a different forum at a later date, and in fact specifically reserve the right to do so in later discovery disputes. Well, let's say there's a change in the law from on high. Why shouldn't they? Why shouldn't the IRS be able to relitigate these? They abandon it here in this circuit. Either they get a split in the circuits on this common interest issue, or we already have one. The ruling comes down from the U.S. Supreme Court on whether it is or is not. Why shouldn't the IRS, if they're within adequate time, be able to come back? Well, Your Honor, that just goes to prove that the dispute is not over and we should not have to run the risk that that eventuality would come about. We do believe that just Friendly's decision in Loomis would control it. You run the risk of getting a decision from us one way or the other, and the Supreme Court rules on it. I apologize, Your Honor. You run the risk if you get a decision from us one way or the other, and then the Supreme Court ultimately takes that issue up and rules on it. To be clear, Your Honor, we are asking for a remand to the district court for further proceedings consistent with this circuit's first decision in Scheffler, which we believe would lead to a final judgment which is indisputably issue-preclusive in all jurisdictions and all cases. So it would have total preclusive effect. There is a court above us. We don't like to acknowledge that always, but . . . Correct. For whatever it's worth, the Supreme Court has declined to, on previous occasions, resolve these distinctions between the circuits on these privilege and work product issues. Exciting things are happening down there. You've reserved three minutes for rebuttal, Mr. Welty. We will hear from Ms. Tinio. Good morning, and may it please the Court. My name is Rebecca Tinio, and I represent the government in this case. The district court properly concluded that this case is moot. It's moot because the IRS withdrew the summons that was the only subject of Mr. Scheffler's petition to quash. In fact, the IRS examination, in aid of which the summons was issued, is over. It's actually being closed out. It's been proceeding throughout this litigation parallel, as Mr. Scheffler acknowledged in his motion to stay this appeal, and that examination is over. And the IRS will not be issuing any further summonses or document requests in aid of that examination. How do we know it's over? It is over because, Your Honor, as this litigation proceeded from the issuance of the summons from 2013 through district court litigation, through the last time we were before this court, and up until now, in parallel, the IRS proceeding has been going on. And Mr. Scheffler does not contest that it's over. In fact, in his own motion to stay this appeal that he filed, he said, we would like to stay this appeal because the IRS examination is drawing to a close, and we'd like to go to the Office of Appeals. We might get a good result there. So we don't actually want to pursue... But did you send a letter to Scheffler saying the examination is over? Mr. Scheffler is receiving notices being sent out. What does that mean? I'm sorry. It's happening. It actually is happening. I believe last Friday. The events have been proceeding in parallel, Your Honor. We said in our brief that the examination was effectively over and we were not going to be seeking the summons documents anymore. Since we filed the brief, the examination has now literally been closed in the system. The examination team cannot... Within the Department of Treasury. I'm sorry? Within the Department of Treasury. Within the IRS, Your Honor, yes. And again, Mr. Scheffler has not contested this. He himself, in his motion to stay this appeal, said the IRS examination is drawing to a close, we're going to the IRS Office of Appeals, and we'd like to stay this appeal while we go there. Mr. Scheffler has never contested that the IRS examination, at that point, was drawing to a close and now is over. What is the significance of the reservation of rights to litigate these issues in future if letters are being sent out that say that this examination is over? Yes, Your Honor. I think that a reservation of rights is an overly strong way to put it, but after the IRS filed its opposition brief saying, hey, you know, we filed our opposition brief, and at this point it really is even more than when Mr. Scheffler made the statement, the examination really is almost over, we're not going to be issuing any more summonses, Mr. Scheffler actually sent us what he called a settlement proposal, and he said, you know, please, you know, we will dismiss our appeal if you promise that not only are you going to never summons these documents again, you're not going to ever seek them again by any other means. And that promise was simple. There's no reason for the IRS to make that promise at this point, and it's far too broad. Now, Mr. Scheffler, this goes to Mr. Scheffler's latest theory, and that latest theory is contained in his reply brief, and he's had to come up with this theory because he does not contest that the examination is over. So Mr. Scheffler's latest theory that goes to the reservation of rights, Your Honor, the so-called reservation of rights, is that the IRS is now preserving its rights to go seek these documents in discovery. And it is true that in a conversation I said, you know, we can't sign your proposed stipulation of settlement because years from now who knows what might happen. We might have to, you know, make some discovery requests, and so we are not going to promise never ever to do that. But the idea that that is some nefarious IRS scheme that this court should view as the temporary voluntary cessation of a legal activity is completely baseless and makes no sense. The examination is over. It also might come back to bite you should you do that. Well, Your Honor, I think the examination is over. If I could answer that question, which it was, yes, it might. I don't think so, Your Honor, actually. No, no, no, no. I mean, if you, given all the representations here and in the brief and the transcript, which obviously I'm sure Mr. Welty will order up or may want to on behalf of me. Well, Your Honor. I mean, these are all representations by the government, it seems to me, that it's over and it's over, and even though Mr. Welty hasn't yet received official notification from the IRS or maybe he has, but I expect it's on the way. The examination is over. That is without doubt, with no cavil, that will not be taken back. Now, Mr. Welty's theory of the reservation of rights, Your Honor, is that he is going now to go to the IRS Office of Appeals. That process is likely to take at least a couple of years, and that's why he wanted a lengthy stay of this appeal. Now, he may be really happy with the result in appeals. He may be somewhat unhappy. If he's unhappy with the result, we don't know what's going to happen. We have no way of knowing. But if he's unhappy with the result, he can choose to initiate litigation. The IRS actually cannot choose to initiate litigation, but if he's unhappy with the result in IRS Office of Appeals, he could do so. Does the IRS always have the ability to end this by withdrawing a summons? In other words, is there any situation where the voluntary cessation doctrine could apply to the IRS just saying, well, we're going to withdraw our summons, so it's over. Your Honor, I think that one could imagine some sort of truly dilatory scenario in which that might happen, but that certainly is not the case here. I mean, I think you have to take, you know, the application of the doctrine case by case, and all of the cases that both parties have cited are really fact specific. So could one imagine a truly, you know, some true misconduct where, you know, there was some secret plot to just reissue another summons? Perhaps one could imagine it. In which a court might feel compelled to disincentivize or punish that conduct by applying the doctrine and not finding mootness. But that is not the case here, Your Honor. There was no strategic plot to evade review. We litigated this case for almost three years up till this court. You know, we had a lot of judicial review. We did not gain any advantage by withdrawing the summons. It was simply a rational litigation decision. Through that entire period, the IRS had had to try and obtain an understanding of this very complex transaction without the summons documents. And by the time this court issued its mandate in January of, I believe, 2016, I think, the IRS had had to do enough work to already have achieved that understanding without the summons documents. And there was simply no reason to continue to prolong this litigation to obtain perhaps more documents. And going back to the reservation of rights, Your Honor, Mr. Scheffler, if he doesn't like what happens in the Office of Appeals, he could initiate litigation in one of three venues. We don't know which venue Mr. Scheffler will choose. We don't know what issues Mr. Scheffler will want to litigate. The issues could be very broad or they could be very narrow. We have no idea what discovery requests might be relevant in order to defend against the issues. Mr. Scheffler's theory that we have some sort of a reservation of rights to pursue these documents in litigation which may or may never happen and which may or may not implicate any of the summons documents is far too speculative to sustain subject matter jurisdiction before Judge Gorenstein, Your Honor. And frankly, even if the IRS issued discovery requests that overlapped with the summons documents, Your Honor was exactly right. The proper place for Mr. Scheffler to interpose any of his discovery objections at that point in litigation would be before the litigating court. That court would know the scope of the litigation. That court would have an understanding of where the parties were at that point. We should not send all hundreds and potentially even thousands of summons documents back to Judge Gorenstein for purely advisory opinion on privileged documents that actually we couldn't even receive. Even if Judge Gorenstein, which could likely happen, ruled that some of those documents were not privileged and we should get them, we have no active summons. We wouldn't even be able to receive the documents. And we have no interest in issuing a summons at this point, Your Honor, because the examination is closed. We're moving on to appeals. There's simply no reason that the IRS wants to pursue these documents at the administrative level at this point. Thank you, Ms. Tenniel. Thank you. Mr. Welty, you've reserved three minutes for rebuttal. Yes, Your Honor. Why aren't you happy with the government's representations here? Or why isn't your client happy? They're very carefully circumscribed. And there's an explicit reservation of rights to relitigate these issues. And, in fact, as in Aarons v. Bowen, in this circuit, it's the government's belief that that's a reasonable course of conduct that in itself proves that there is a likelihood of them again summoning or not summoning but trying to require production of these documents. Additionally, the IRS and Ms. Tenniel talk about this doctrine as a way to punish the government. It's not a way to punish the government. The government has a burden to prove that it's not going to repeat this conduct. But the ruling inherently illegal in the government issuing summons is in connection with an investigation. You have specific issues as to the government's desire for particular documents that, as long as the government is looking for them, could be litigated, but this is not the typical voluntary secession of illegal conduct case, is it? Yes, in fact, it is, Your Honor. For example, we cite certain underwriters for Lloyds of London v. Argonaut, 500 F. 3rd at 575. The conduct at issue there before the Seventh Circuit was the appointment of an arbitration panel and the method of doing so. No hint of illegality. But even more directly, in Sediman, Your Honor, 499 F. 3rd, 119, there was no question that unions could collect agency fees from nonunion members, but not those that infringed on First Amendment rights. Or in Mahaney Management v. County of Nassau, there is no question that the county had the right to zone, but not in a discriminatory manner. Here, there is no question that the IRS has the right to summons and require production of documents, but according to the Supreme Court in Upjohn, Clark, and Reisman, not those documents that are covered by privilege and work product protections. But the problem I have with, and I'll go along with you on everything you've said, the problem I have is they don't want any documents now. You're done. Your Honor, they're explicitly reserving the right to relitigate these issues, and that goes to the heart, the heart of the voluntary cessation doctrine. That reservation of rights. You don't specifically reserve the right to relitigate, which obviously you are, the assertion of the privilege with respect to those documents. No, Your Honor. And why should we waste the judiciary's time arguing over something that is purely advisory and sending it back to good magistrate Judge Gorenstein, downstairs somewhere, I believe, to make these same decisions on a purely advisory basis when there is nothing that isn't available to you at such time as the IRS actually says, well, you know, now we've changed our mind. You want to litigate. We're litigating. We're demanding these things. And then you get it in front of the proper forum to make a determination and go on to whichever appellate avenue you want. Your Honor, we do not believe that this is purely an advisory opinion at all. In fact, the voluntary cessation doctrine itself relates to future conduct. That's why you find it in injunction and declaratory relief type cases here, in most cases. Here we are seeking a final adjudication of our privilege and work product claims through proceedings at the district court level. You're irrelevant. This matter is resolved. No, Your Honor. Those claims would be finally adjudicated and fully preclusive in any future attempt, which the government is saying it's reserving the right to do, to relitigate those issues. It's a preclusivity question, not an injunctive or declaratory or advisory type question. As it relates to wasting resources, Your Honor, in the record below that I cited to you, the document 1-16 file, July 12, 2013, it documents that we requested the IRS narrow the scope, withdraw the summons, and that there were over 20 attorneys for Scheffler full-time engaged in preparing privilege logs. For the IRS today to say it would be wasteful to engage in the rest of this when we're at the ten-yard line and almost going to get a complete touchdown for our client, that is actually more wasteful than frugal at this point. We are on the cusp of a complete victory, and they're trying to walk away right before the bell rings. Thank you very much, Mr. Welty. Thank you both. We'll reserve decision.